UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KELLY R.,[1] | ) | CIVIL ACTION NO. 4:23-CV-00685 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| FRANK BISIGNANO,[2] | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Kelly R. is an adult who lives in the Middle District of Pennsylvania. She seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §1383(c)(3)(incorporating 42 U.S.C. §405(g) by reference).

This matter is before me upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 7). After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, we find the Commissioner's final

---

[1] We adopt the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that federal courts refer to social security plaintiffs by their first name and last initial.

[2] Frank Bisignano became the Acting Commissioner of Social Security on January 20, 2025. He is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g).

decision is supported by substantial evidence. Accordingly, the Commissioner's final decision will be AFFIRMED.

## II.    BACKGROUND AND PROCEDURAL HISTORY

On November 30, 2018, Plaintiff protectively filed an application for supplemental security income under Title XVI of the Social Security Act. (Admin. Tr. 111; Doc. 9-3, p. 37).  In this application, Plaintiff alleged she became disabled on November 30, 2018, when she was forty-three years old, due to the following conditions: herniated disk in the neck and back; nerve damage; migraines; depression; PTSD; and acid reflux. (Admin. Tr. 307; Doc. 9-6, p. 6). Plaintiff alleges that the combination of these conditions affects her ability to lift, squat, bend, stand, walk, sit, kneel, climb stairs, see, and complete tasks. (Admin. Tr. 321; Doc. 9-6, p. 20). Plaintiff attended school through the ninth grade. (Admin. Tr. 308; Doc. 7). Before the onset of her impairments, Plaintiff worked as a bus monitor at a school and a cashier in retail. (Admin. Tr. 308; Doc. 9-6, p. 7).

On March 22, 2019, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 138; Doc. 9-4, p. 5). On March 26, 2019, Plaintiff requested an administrative hearing. (Admin. Tr. 143; Doc. 9-4, p. 10).

On November 9, 2020, Plaintiff and her counsel participated in a telephone hearing before Administrative Law Judge Daniel Balutis. (Admin. Tr. 33; Doc. 9-2, p. 34). On January 8, 2021, the ALJ issued a decision denying Plaintiff's application

for benefits. (Admin. Tr. 108; Doc. 9-3, p. 34). On February 4, 2021, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 218; Doc. 9-4, p. 85).

On September 14, 2021, the Appeals Council vacated the ALJ's hearing decision and remanded Plaintiff's case for a new hearing. (Admin. Tr. 130; Doc. 9-3, p. 56). On January 25, 2022, Plaintiff and her counsel participated in a telephone hearing before the ALJ. (Admin. Tr. 67; Doc. 9-2, p. 68). On February 14, 2022, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 12; Doc. 9-2, p. 13). On February 14, 2022, Plaintiff requested that the Appeals Council review the ALJ's decision. (Admin. Tr. 218; Doc. 9-4, p. 85). The Appeals Council denied review on February 24, 2023. (Admin. Tr. 1; Doc. 9-2, p. 2).

On April 25, 2023, Plaintiff filed a complaint in federal court requesting judicial review of the Commissioner's final decision. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's decision denying her application is not supported by substantial evidence and contains errors of law. (Doc. 1, ¶¶ 18-19). As relief, Plaintiff requests that the court award benefits, or remand this matter to the Social Security Administration for further consideration. (Doc. 1).

The Commissioner answered the complaint. (Doc. 8). In the answer, the Commissioner maintains that the decision denying Plaintiff's application was made

in accordance with the law and is supported by substantial evidence. (Doc. 8, ¶ 8). Along with his answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 9).

Plaintiff's Brief (Doc. 10), the Commissioner's Brief (Doc. 14), and Plaintiff's reply have been filed. (Doc. 15). This matter is now ready to decide.

## III.   LEGAL STANDARDS

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals, including the standard for substantial evidence review, and the guidelines for the ALJ's application of the five-step sequential evaluation process. We will also discuss the framework an ALJ uses to evaluate medical opinions and prior administrative medical findings.

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[3] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] Substantial evidence is

---

[3] *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).
[4] *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

less than a preponderance of the evidence but more than a mere scintilla.[5] A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict in the record.[6] In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[7] When determining if the Commissioner's decision is supported by substantial evidence under sentence four of 42 U.S.C. § 405(g), the court may consider any evidence that was in the record that was made before the ALJ.[8]

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence

---

[5] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[6] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

[7] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[8] *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) ("when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ (Sentence Four review)."). The claimant and Commissioner are obligated to support each contention in their arguments with specific reference to the record relied upon. L.R. 83.40.4; *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli v. Comm'r of Soc. Sec.*, No. 15-7449, 2016 WL 6821082 (D.N.J. Nov. 16, 2016) (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[9]

To determine whether the final decision is supported by substantial evidence, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[10] In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[11]

---

[9] *Biestek v. Berryhill*, 587 U.S. 97, 102-103 (2019).

[10] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[11] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

Furthermore, meaningful review cannot occur unless the final decision is adequately explained. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[12]

## B.  STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[13] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[14] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under

---

[12] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

[13] 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).

[14] 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

retirement age, and became disabled prior to the date on which he or she was last insured.[15] Unlike disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security benefits" under Title XVI of the Social Security Act.[16]

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[17] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[18]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[19] In making this assessment, the ALJ considers

---

[15] 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

[16] *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 U.S. Dist. LEXIS 41109, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017).

[17] 20 C.F.R. § 404.1520(a).

[18] 20 C.F.R. § 404.1520(a)(4).

[19] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1).

all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[20]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work.[21] Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.[22]

### C.    STANDARDS FOR THE ALJ'S EVALUATION OF MEDICAL OPINIONS & PRIOR ADMINISTRATIVE MEDICAL FINDINGS

When deciding whether to grant or deny an application for benefits, an ALJ is required to consider "all evidence" in the case record.[23] How that evidence is considered and the extent to which an ALJ is required to articulate that consideration is dictated by the Commissioner's regulations. Two types evidence of that often appear in social security case records are: (1) medical opinions; and (2) prior administrative medical findings.[24] The framework governing an ALJ's consideration

---

[20] 20 C.F.R. § 404.1545(a)(2).

[21] 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064.

[22] 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

[23] 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 416.920(a)(3).

[24] The Commissioner's regulations also carefully define these types of evidence. 20 C.F.R. § 404.1502(d) (defining medical source); 20 C.F.R. §

of medical opinions and prior administrative medical findings is set forth in 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c.

Turning to the question of how medical opinions and prior administrative medical findings are considered, under these regulations, an ALJ will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."[25] Instead, the persuasiveness of all medical opinions and prior administrative medical findings is evaluated based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including the length of treatment, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship); and (4) specialization.[26] The ALJ may also consider any other factors that "tend to support or contradict" a medical opinion or prior administrative medical finding, including but not limited to: a source's familiarity with the other evidence in the claim, his or her understanding of the disability program and policies, and whether new evidence

_____

416.902(d) (same as 20 C.F.R. § 404.1502(d)); 20 C.F.R. § 404.1513(a)(2) (defining the types of statements that are medical opinions); 20 C.F.R. § 416.913(a)(2) (same as 20 C.F.R. § 404.1513(a)(2)); 20 C.F.R. § 404.1513(a)(5) (defining prior administrative medical finding); 20 C.F.R. § 416.913(a)(5) (same as 20 C.F.R. § 404.1513(a)(5)).

[25] 20 C.F.R. § 404.1520c(a).

[26] 20 C.F.R. § 404.1520c(c).

received after the opinion or finding was issued makes the opinion or finding more or less persuasive.[27] Finally, when a single source provides multiple opinions or findings, those opinions or findings will be considered together.[28]

There is, however, a significant difference between what an ALJ is required to consider and what an ALJ is required to *articulate*.[29] The Commissioner's regulations provide that, in most cases, the ALJ is only required to articulate how two factors are considered: supportability and consistency.[30] Additional factors will only be discussed "as appropriate."[31] Finally, like the *consideration* of multiple opinions or findings by the same source, the ALJ will *articulate* how he or she evaluated them together.[32]

---

[27] 20 C.F.R. § 404.1520c(c).

[28] 20 C.F.R. § 404.1520c(a).

[29] *See Zaborowski v. Comm'r of Soc. Sec.*, No. 23-2637, 2024 U.S. App. LEXIS 23672, 2024 WL 4220691 (3d Cir. Sept. 18, 2024) (observing that when evaluating "medical opinions in Social Security matters, administrative law judges must consider a range of factors, but all they must explain are the reasons for their decisions.").

[30] 20 C.F.R. § 404.1520c(b)(2).

[31] 20 C.F.R. § 404.1520c(b)(2); see also 20 C.F.R. § 404.1520c(b)(3) (explaining it is appropriate to explain how the other "most persuasive" factors were considered where two or more medical opinions or prior administrative medical findings about the same issue are equally well-supported and equally consistent with the case record).

[32] 20 C.F.R. § 404.1520c(b)(1).

The sufficiency of an ALJ's articulation of how supportability and consistency were considered is a frequently litigated issue. The consideration of an opinion or finding's "supportability" involves a review of the objective medical evidence and supporting explanations that the source who issued that opinion or finding provides.[33] The consideration of an opinion or finding's "consistency" involves a review of evidence from other medical and nonmedical sources.[34] Thus, it naturally follows that the articulation of how "supportability" and "consistency" were considered requires a discussion of supporting evidence and explanations given by the source of the opinion or finding, and the evidence from other medical and nonmedical sources, coupled with an explanation of how that evidence supports or contradicts the limitations set forth in a source's opinion or finding.[35]

Although it is helpful for the purposes of judicial review, nothing in 20 C.F.R. § 404.1520c(b) requires that an ALJ use the words "supportability" or "consistency," when articulating how those factors were considered.[36] A mere summary of the

---

[33] 20 C.F.R. § 404.1520c(c)(1).

[34] 20 C.F.R. § 404.1520c(c)(2).

[35] *See, e.g.*, *Larkin v. O'Malley*, No. CV 23-275-LDH, 2024 U.S. Dist. LEXIS 74140, 2024 WL 1675678, at *5 (D. Del. Mar. 28, 2024) (observing an ALJ adequately addressed supportability by noting the absence of a supporting explanation where a physician merely checked boxes for diagnoses and symptoms).

[36] *Zaborowski*, 2024 U.S. App. LEXIS 23672, 2024 WL 4220691, at *2 (concluding an ALJ need not "reiterate the magic words 'support' and 'consistent' for each doctor," and upholding an ALJ's decision as consistent with 20 C.F.R. §

source's opinion or findings or a summary of the evidence with no analysis, however, does not satisfy an ALJ's obligation under 20 C.F.R. § 404.1520c(b).[37] A single sentence devoted to this explanation may not be enough.[38] And the explanation must be clear enough that the Court can easily discern what evidence the ALJ is discussing in that articulation.[39]

---

404.1520(b)(2) where the ALJ wove "supportability and consistency throughout her analysis of which doctors were persuasive.").

[37] *Solberg v. O'Malley*, No. CV 23-2639, 2024 U.S. Dist. LEXIS 79298, 2024 WL 1943328, at *6 (E.D. Pa. Apr. 30, 2024); *Alejandro v. O'Malley*, No. 21-CV-04076-RAL, 2024 U.S. Dist. LEXIS 71581, 2024 WL 1704904, at *4 (E.D. Pa. Apr. 18, 2024) (a conclusion that an opinion or finding is not persuasive unaccompanied by explanation is not sufficient); *Khal v. Kijakazi*, 2023 U.S. Dist. LEXIS 121214, 2023 WL 4546497, at *8-9 (E.D. Pa. July 13, 2023) (finding that general conclusions concerning a claimant's RFC, a factual recitation of a physician's treatment records, or a summary of other evidence in the record that appears somewhere in the ALJ's decision does not meet an ALJ's obligations under 20 C.F.R. § 404.1520c(b)).

[38] *Andrews v. Kijakazi*, No. 1:20-CV-01878, 2022 U.S. Dist. LEXIS 37111, 2022 WL 617118, at *7 (M.D. Pa. Mar. 2, 2022) (finding that an ALJ did not adequately articulate why he found an opinion persuasive where he provided only one sentence to address both supportability and consistency, did not cite to any exhibits, and inaccurately claimed that the source had the benefit of reviewing the entire record).

[39] *Brownsberger v. Kijakazi*, No. 3:20-CV-01426, 2022 U.S. Dist. LEXIS 8878, 2022 WL 178819, at *7 (M.D. Pa. Jan 18, 2022) (remanding where an ALJ did not provide citations to specific evidence in the record, which made impossible to review).

## IV.   DISCUSSION

Plaintiff argues that substantial evidence does not support the ALJ's decision because:

(1)   "The ALJ erroneously rejected the opinion of the treating specialist which, if properly found persuasive, fairly compels a finding of disability" (Doc. 10, p. 5).

(2)   "The ALJ erroneously rejected the opinion of the consultative physician which, if properly found persuasive, fairly compels a finding of disability" (*Id.*, p. 10).

(3)   "The ALJ erroneously failed to include all of Plaintiff's credibly established limitations in the RFC and hypothetical presented to the vocational expert" (*Id.*, p. 14).

Before turning to the merits of Plaintiff's arguments, we will summarize the ALJ's findings in his decision.

### A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his February 14, 2022, decision, the ALJ denied Plaintiff's application for benefits, finding that she was not disabled since November 30, 2018. (Admin. Tr. 16; Doc. 9-2, p. 17). Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity since November 30, 2018, her alleged onset date. (Admin. Tr. 17; 9-2, p. 18).

At step two, the ALJ found that Plaintiff had the following medically determinable severe impairments: cervical and lumbar spondylosis, cervical and

lumbar degenerative disc disease, left central disc herniation at L5-S1, depression, migraines, and chronic pain syndrome. (Admin. Tr. 17; Doc. 9-2, p. 18). The ALJ also found the Plaintiff had the following impairments, which he determined were non-severe: acid reflux and stress incontinence. (Admin. Tr. 18; 9-2, p. 19). The record further contained assessments of post-traumatic stress disorder and cannabis use disorder. (Admin. Tr. 18; Doc. 9-2, p. 19). However, the record contains no additional treatment for these conditions. (Admin. Tr. 18; Doc. 9-2, p. 19). In accordance with the Appeals Council Remand Order, (Admin. Tr. 130; 9-3, p. 56), the ALJ also considered Plaintiff's obesity, which he determined to be non-severe because it did not cause more than a minimal limitation on Plaintiff's ability to perform basic activities. (Admin. Tr. 18; 9-2, p. 19). Further, while the record reflected that Plaintiff had a BMI of 30.21 in March 2020, Plaintiff's counsel explained to the ALJ that due to substantial weight loss, Plaintiff may no longer have a BMI above 30, and thus would no longer qualify as obese. (Admin. Tr. 72; 9-2, p. 73). Plaintiff's medical visits were restricted to telemedicine during the covid pandemic, resulting in a lack of updated weight management in her medical records. (Admin. Tr. 18; 9-2, p. 19). Accordingly, the ALJ determined that the record established "obesity as a non-severe medically determinable impairment at best." (Admin. Tr. 18; 9-2, p. 19).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 19-20; Doc. 9-2, pp. 21-22).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that Plaintiff retained the RFC to engage in sedentary work as defined in 20 C.F.R. § 416.967(a) with the following additional limitations:

> The claimant can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, balance occasionally, and crawl occasionally. The claimant can work at unprotected heights frequently, move mechanical parts frequently, in humidity and wetness frequently, and in extreme cold frequently. The claimant is able to perform simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work). The claimant is able to interact with supervisors and coworkers frequently. The claimant is able to tolerate few changes in a routine work setting as defined as occasional changes in routine work setting.

(Admin. Tr. 21; Doc. 9-2, p. 22).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in her past relevant work. (Admin. Tr. 25-26; Doc. 9-2, pp. 26-27).

At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 26-27; Doc. 9-2, pp. 27-28). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations:

final assembler, DOT #713-687-018; lens inserter, DOT #713.687-026; and systems monitor, DOT #379.367-010. *Id*.

**B.    WHETHER THE ALJ ERRED IN HIS CONSIDERATION OF THE PANDE AND SALTZGABER OPINIONS**

Plaintiff argues that the ALJ erroneously rejected the opinions of her treating specialist and the examining consultative physician, which, if credited, compelled a finding of disability because each concluded she was not capable of performing even sedentary exertional work. (Doc. 10, pp. 5, 10). In response, the Commissioner argues that the ALJ's determination on the opinions is supported by substantial evidence and that Plaintiff is implicitly requesting that this Court reweigh the evidence in her favor. (Doc. 14, pp. 11, 14-15).

After her alleged onset date, Plaintiff presented for a consultative physical examination with Dr. Lee Saltzgaber, M.D. in February 2019. (Admin. Tr. 739; Doc. 9-7, p. 336). Plaintiff complained of "persistent 8/10 stabbing back pain that does get to 10/10 on a daily basis" and which gets "worse with bending, standing, sitting, and walking. It improves with her use of her TENS unit and laying down." *Id.* Dr. Saltzgaber noted Plaintiff's activities of daily living:

> She lives with her mother. She participates in cooking and shopping rarely, once a month or couple of times a month, but does not do any cleaning, or laundry. There is no need for childcare. She bathes twice a week and dresses herself once or twice. She watches TV, listens to radio, reads, Facebook, watches movies, and listens to music.

(Admin. Tr. 740; Doc. 9-7, p. 337).

Dr. Saltzgaber further noted that Plaintiff appeared to be in moderate distress needing to stand while her history was taken, had a slow, stuttering, and antalgic gait, could not perform heel-to-toe walk without difficulty due to imbalance, could only perform a half squat due to pain, had a normal stance though leaning to the left, did not require assistance getting on or off the exam table, but was unable to rise from the chair without difficulty. (Admin. Tr. 741; Doc. 9-7, p. 338). Plaintiff appeared to have stable and nontender joints, no trigger points, 5/5 strength in her upper and lower extremities except noted in bilateral knee extension and bilateral ankle flexion and hand and finger dexterity with 5/5 bilateral grip strength. (Admin. Tr. 742; Doc. 9-7, p. 339).

Dr. Saltzgaber completed a check-box type questionnaire about Plaintiff's ability to do physical work-related activities. (Admin. Tr. 744; Doc. 9-7, p. 341). In that questionnaire, Dr. Saltzgaber was asked to rate Plaintiff's ability to perform a series of activities and tasks and how frequently those tasks could be performed based on the following scale: never; occasionally (very little to one-third of the time); frequently (one third to two-thirds of the time); and continuously (more than two-thirds of the time). *Id.* Dr. Saltzgaber found that Plaintiff could occasionally lift and carry up to ten pounds but never lift more, could occasionally reach, handle, finger, feel and pull with both hands and operate foot controls with both feet , could never climb stairs, ramps, ladders, or scaffolds, or balance, stoop, kneel, crouch, or crawl,

work at unprotected heights, operate a motor vehicle, or tolerate vibrations. (Admin. Tr. 744-749; Doc. 9-7, pp. 341-346). He further found that Plaintiff could not walk for more than fifteen minutes, stand for more than thirty minutes, or sit for more than an hour without interruption, and in an eight-hour workday, could sit for no more than a total than three hours and stand or walk for no more than one hour. (Admin. Tr. 745; Doc. 9-7, p. 342). As stated by the ALJ's decision, this examination reflected an inability to perform even sedentary exertional work. (Admin. Tr. 24; Doc. 9-2, p. 25).

On November 15, 2019, Dr. Vinit Pande, M.D., Plaintiff's treating physician since April 2015, completed a Medical Source Statement containing a similar, but shorter questionnaire to the one completed by Dr. Saltzgaber. (Admin. Tr. 896-98; Doc. 9-7, pp. 493-95). In the questionnaire, Dr. Pande was asked to rate Plaintiff's ability to perform a series of activities and tasks and how frequently those tasks could be performed based on the following scale: never; rarely (cumulatively, 1% to 5% of an 8-hour working day); occasionally (cumulatively, 6% to 33% of an 8-hour working day); and frequently (cumulatively, 34% to 66% of an 8-hour working day). *Id.*

Dr. Pande found that Plaintiff could sit for less than two hours a day, stand or walk for less than four hours, occasionally lift less than ten pounds, occasionally climb stairs with a rail, rarely bend or twist, and never crouch, squat, stoop, or climb

ladders. *Id.* He found that Plaintiff would need a position that required shifting position from sitting, standing or walking, that she had significant limitations with reaching, handling, or fingering, that Plaintiff impairments were likely to produce "bad days," and that her impairments would likely cause her to be absent from work more than three days per month if she was attempting to work full time. *Id.*

The ALJ found both medical opinions unpersuasive because they were unsupported by and inconsistent with the objective medical evidence and Plaintiff's activities of daily living.[40] (Admin. Tr. 24; Doc. 9-2, p. 25). His supportability and consistency analysis stated:

> The undersigned finds these opinions unpersuasive, as they are not supported by or consistent with the medical evidence of record and activities of daily living previously discussed. Specifically, objective medical evidence of full strength, intact sensation, and improvement with treatment, along with her ability to walk, go out alone, and grocery shop in stores, more fully support her capability of performing sedentary exertional work with additional postural and environmental limitations.

*Id.*

---

[40] The ALJ found "somewhat persuasive" the medical opinion of the State agency medical consultant Dr. Crescenzo Calise, M.D., who in March 2019 found that Plaintiff was capable of a reduced range of light exertional work with occasional postural maneuvers, but never climbing ladders, ropes, or scaffolds and avoidance of concentrated exposure to extreme cold, humidity, and hazards. (Admin. Tr. 24; Doc. 9-2, p. 25). Considering Plaintiff's hearing testimony, however, the ALJ accommodated greater exertional limitation than provided by limiting Plaintiff to no more than sedentary exertional work. *Id.*

The previously discussed medical evidence of record referenced by the ALJ included records produced by Dr. Pande during Plaintiff's visits to Northeastern Rehabilitation Services between July 2019 and February 2020.[41] (Admin. Tr. 24; Doc. 9-2, p. 25). While the records indicate that Plaintiff complained of functional limitations due to her pain symptomology, the records also indicate that she ambulated with a reciprocal/independent gait and experienced "[a]pproximately 30% relief with current medication," consistent 5/5 strength in in her upper and lower extremities, and intact sensation. (Admin. Tr. 755-764; Doc. 9-7, pp. 351-361); (Admin. Tr. 899-910; Doc. 9-7, p. 496-507); (Admin. Tr. 911-914; Doc. 9-7, pp. 508-511). The ALJ further noted that the records supported continued functional and analgesic benefit and limited side effects from her medical regiment. (Admin. Tr. 756; Doc. 9-7, p. 353); (Admin. Tr. 901; Doc. 9-7, p. 498); (Admin. Tr. 913; Doc. 9-7, p. 510). The ALJ acknowledged that an MRI study indicated only mild degenerative disc disease at C6-C7. (Admin. Tr. 903; Doc. 9-7, p. 500). Plaintiff further indicated in July 2020 that her medical regimen helps her maintain function. (Admin. Tr. 947; Doc. 9-7, p. 544).

---

[41] The cited records show that Plaintiff visited Northeastern Rehabilitation Services nine times during this period. (Admin. Tr. 755-764; Doc. 9-7, pp. 351-361); (Admin. Tr. 899-910; Doc. 9-7, pp. 496-507); (Admin. Tr. 911-914; Doc. 9-7, pp. 508-511).

Concerning Plaintiff's activities of daily living, the ALJ discussed both Plaintiff's hearing testimony and the third-party function report submitted by Plaintiff's mother, with whom Plaintiff lives. (Admin. Tr. 22; Doc. 9-2, p. 23); (Admin. Tr. 25; Doc. 9-2, p. 26). He noted Plaintiff's hearing testimony wherein she reported that she could prepare her own meals, go out alone, use public transportation, shop in stores, count change, watch television and movies, spend time with her niece and nephew, play video games, pay attention, follow instructions, get along well with authority figures, and handle changes in routine. (Admin. Tr. 23; Doc. 9-2, p. 24). Similarly, the ALJ noted that Plaintiff's mother reported she took her medicine without reminders, prepare frozen meals daily, could go out alone, shop in stores twice a month, count change, watch television and movies, hang out with her niece and nephew, play video games, and go to doctor's appointments by herself. (Admin. Tr. 25; Doc. 9-2, p. 26).

Plaintiff makes a number of arguments as to the insufficiency of the ALJ's consistency and supportability analysis. She argues that the ALJ erroneously rejected Dr. Pande's opinion as her treating physician and Dr. Saltzgaber as an examining physician because they should be given more weight. (Doc. 10, pp. 5, 10). She further argues that the ALJ erred in because he omitted from his that Dr. Pande and Dr. Saltzgabers' opinions were consistent with each other, and that both were consistent with nonmedical evidence regarding Plaintiff's limitations.

Plaintiff's arguments, however, ask this Court to re-evaluate the persuasiveness of the medical opinions and reweigh the evidence in her favor. This we may not do. Our analysis is cabined to whether substantial evidence supports the ALJ's findings.[42] Here, the ALJ provided a detailed discussion of Plaintiff's objective medical evidence, the medical opinions, Plaintiff's hearing testimony, and the third-party function report. (Admin. Tr. 15-27; Doc. 9-2, pp. 16-28). The ALJ then explained why he did not find Dr. Pande and Dr. Saltzgabers' opinions persuasive, citing to specific parts of the objective medical record in doing so. *Id.* At the ALJ hearing Plaintiff's counsel asked the VE three hypothetical questions derived directly from the limitations suggested by Drs. Khandi and Saltsgaber. The VE conceded that there would be no work if those limitations were included. The ALJ considered these limitations, but rejected them as inconsistent with the record as a whole. Because the ALJ's decision is supported by "more than a mere scintilla" of evidence, we find that the ALJ did not err in his consideration of the medical opinion evidence, and his persuasiveness analysis of the medical opinions is supported by substantial evidence.

---

[42] 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Biestek v. Berryhill*, 587 U.S. 97, 102-03, 139 S. Ct. 1148, 203 L. Ed. 2d 504 (2019).

### C.    WHETHER THE ALJ ERRED IN PRESENTING HIS HYPOTHETICAL QUESTION TO THE VOCATIONAL EXPERT

Here, the ALJ supported his determination at step five by relying on the VE's response to a hypothetical question regarding the ability to perform work despite the presence of certain limitations. Plaintiff argues that substantial evidence does not support the ALJ's determination because that hypothetical question did not include all of Plaintiff's credibly established limitations. He alleges that the omitted limitations were the ones assessed by Dr. Pande and Dr. Saltzgaber.

In decisions where an ALJ relies on a VE to support his step five determination, substantial evidence does not support his conclusion where the VE's testimony was elicited using an incomplete or inaccurate hypothetical question.[43] A hypothetical question is inaccurate where it does not account for all a claimant's credibly established limitations. Not every limitation alleged, however, will be credibly established. The Third Circuit articulated the following framework to determine whether a limitation is credibly established:

> First, limitations that are supported by medical evidence and are "otherwise uncontroverted in the record" must be included in the ALJ's hypothetical for us to rely on the VE's response to that hypothetical. [*Rutherford*, 399 F.3d at 554] However, where a limitation is supported by medical evidence, but is opposed by other evidence in the record,

---

[43] *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) ("the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations.").

the ALJ has discretion to choose whether to include that limitation in the hypothetical. *Id.* This discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason. *Id.* Finally, the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible. *Id.*[44]

Here, Plaintiff implies that the ALJ improperly omitted, without specifically stating any, "the limitations assessed by those physicians" opinions. The only basis offered by Plaintiff to support his argument that these limitations were credibly established is their presence in the opinions. As discussed in the preceding section of this Memorandum, substantial evidence supports the ALJ's persuasiveness findings. Thus, they are effectively limitations not supported by credible medical evidence. Applying the correct framework, it is within the ALJ's discretion to exclude or include these limitations, and Plaintiff offers no basis to disturb that conclusion.

Accordingly, we find that ALJ's hypothetical question did not improperly omit these limitations, and therefore substantial evidence supports the ALJ's conclusion at step five.

[The next page contains the Conclusion]

---

[44] *Zirnsak*, 777 F.3d at 614-15.

## V.    CONCLUSION

Accordingly, for the foregoing reasons, the final decision of the Commissioner will be AFFIRMED. An appropriate order will be issued.

Date: January 21, 2025                    BY THE COURT

*s/William I. Arbuckle*
William I. Arbuckle
U.S. Magistrate Judge